

**U.S. Department of Justice**

*United States Attorney*
*District of New Jersey*

| | | |
|---|---|---|
| PHILIP R. SELLINGER<br>*United States Attorney*<br><br>JEFFREY B. BENDER<br>*Assistant United States Attorney* | CAMDEN FEDERAL BUILDING & U.S. COURTHOUSE<br>*401 Market Street, 4th Floor*<br>*Post Office Box 2098*<br>*Camden NJ 08102* | 856.757.5026<br>Fax: 856.968.4917<br>Direct Dial: 856/757-5121 |

March 11, 2022

**VIA HAND DELIVERY – NOT FILED ON ECF**

The Honorable Noel L. Hillman
United States District Judge
District of New Jersey
Mitchell H. Cohen Courthouse
One John F. Gerry Plaza
4th & Cooper Streets
Camden, New Jersey 08101

      Re:    *United States v. Mark D'Amico*, Crim. No. 1:20-cr-21 (NLH)

Dear Judge Hillman:

      The United States submits this letter brief in advance of the sentencing of Defendant Mark D'Amico (hereinafter "the defendant"), presently scheduled for **April 1, 2022 at 1:00 p.m**. On November 22, 2021, the defendant pleaded guilty to Count One of the Indictment, which charged him with conspiracy to commit wire fraud, in violation of 18 U.S.C. § 1349.

      For the reasons set forth herein, the United States believes that a sentence of imprisonment at the top of an advisory Guidelines range of 21 to 27 months would be sufficient, but not greater than necessary, to accomplish the goals of sentencing set forth in 18 U.S.C. § 3553(a).

      **I.**    **Relevant Facts**

      In November 2017, Mark D'Amico and his then-girlfriend Katelyn McClure created a GoFundMe account purportedly to help Johnny Bobbitt, a homeless man, who they said had helped McClure by giving her his last $20 to buy gas when she was stranded alone at night on the side of I-95 in Philadelphia. D'Amico and McClure praised Bobbitt as a "Good Samaritan" and asked for donations to help lift Bobbitt from poverty, calling on the general public to "pay forward" the $20 gift Bobbitt had given to McClure. The story went viral. Within weeks, D'Amico and McClure had raised more than $400,000 for Bobbitt from benefactors all over the world. Unfortunately, the story was a lie, as were their promises to use the monies for Bobbitt's benefit.

1

Because of the public nature of a GoFundMe campaign, anyone can access the website and track a campaign's success. Thus, potential donors knew or could have known that they would be donating to a cause that had already raised more than its stated goal of $10,000. To encourage donors to continue contributing, D'Amico and McClure fraudulently posted updates to their website falsely claiming that decisions on how to spend the money would be made by Bobbitt. They knew, however, that D'Amico was and would be unwilling to keep his hands off the substantial funds raised by their scheme. McClure's message to D'Amico in conjunction with their transfer of funds from GoFundMe to D'Amico's GreenDot card was particularly prescient: "I don't trust you with any money at all whatsoever and this all needs to be accounted for. Like I'm really freaking out right-now, just being honest."

McClure was correct not to trust D'Amico with the money. D'Amico and McClure spent most of it on themselves. They went on trips together, they bought luxury items, and D'Amico invested in cryptocurrency. Most significantly, he gambled away a majority of the money individuals donated to GoFundMe for Bobbitt's benefit. All of the money was gone by March 2018.

In Summer 2018, local media reports indicated that Bobbitt was again homeless, which led to national media coverage of the dispute between D'Amico/McClure and Bobbitt. D'Amico and McClure tried to maintain their story that at least $150,000 to $200,000 of the funds were sitting in an account for Bobbitt's benefit, but that story soon unraveled, too. D'Amico began the scheme with lies, furthered it with lies, and ended it with lies.

## II. The Sentencing Process

After United States v. Booker, 543 U.S. 220 (2005), sentencing involves a three-step process:

(1) Courts must continue to calculate a defendant's Guidelines sentence precisely as they would have before Booker;

(2) Courts must formally rule on the departure motions of both parties and state on the record whether they are granting a departure and how that departure affects the Guidelines calculation; and

(3) Courts are required to exercise their discretion by considering the relevant 18 U.S.C. § 3553(a) factors in setting the sentence they impose.

United States v. Ali, 508 F.3d 136, 142 (3d Cir. 2007).

### A. Step I of Sentencing

The United States Probation Office calculated a Guidelines offense level of 15 as follows:

- A base offense level of 7, pursuant to U.S.S.G. § 2B1.1(a)(1).
- An increase of 12 levels, pursuant to U.S.S.G. § 2B1.1(b)(1)(G) because the loss was greater than $250,000.

2

- A decrease of 3 levels because the defendant timely accepted responsibility. ▮

The Probation Office also determined that the defendant has no criminal history points, placing him in Criminal History Category ("CHC") I. ▮. An offense level of 16 and CHC of I yields an advisory Guidelines imprisonment range of 21 to 27 months. ▮ The United States concurs with these calculations.

### B.   Step II of Sentencing

At Step 2 of the sentencing process, the Court must determine whether a departure from the Guidelines range is warranted and rule on any departure motions.

To date, the United States has not received any motion from the defendant for a downward departure.[1] Indeed, in their plea agreement, the parties agreed not to seek or argue for any upward or downward departures at Step II of sentencing. See Plea Agr., Sch. A, ¶ 10. Accordingly, no departures should be granted.

If the Court is contemplating a departure "from the applicable sentencing range on a ground not identified for departure either in the presentence report or in a party's prehearing submission," it must give the parties "reasonable notice." Fed. R. Crim. P. 32(h); see Izirarry v. United States, 553 U.S. 708, 713-14 (2008); United States v. Vampire Nation, 451 F.3d 189, 197-98 (3d Cir. 2006).

### C.   Step III of Sentencing

During Step 3 of the sentencing process, the Court should "tailor the sentence in light of other statutory concerns reflected in the sentencing factors of § 3553(a)." United States v. Merced, 603 F.3d 203, 213 (3d Cir. 2010) (internal quotation marks omitted). The Court must give "rational and meaningful consideration of the factors enumerated in 18 U.S.C. § 3553(a)" and make an "individualized assessment based on the facts presented." United States v. Tomko, 562 F.3d 558, 567-68 (3d Cir. 2009) (en banc) (internal quotation marks omitted).

Under § 3553(a), "[t]he Court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing. 18 U.S.C. § 3553(a).[2] Those purposes are: "(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most

---

[1]   To the extent the defendant subsequently files a departure motion, the United States respectfully reserves its right to respond to such a motion.

[2]   This "so-called parsimony provision" is in fact even-handed, as it requires the sentence to be "sufficient" to serve the punitive and deterrent purposes of sentencing in § 3553(a)(2). See United States v. Dragon, 471 F.3d 501, 503, 506 (3d Cir. 2006); United States v. Charles, 467 F.3d 828, 833 (3d Cir. 2006).

effective manner." 18 U.S.C. § 3553(a)(2). In determining that sentence, this Court must consider "the nature and circumstances of the offense and the history and characteristics of the defendant," 18 U.S.C. § 3553(a)(1), "the kinds of sentences available," § 3553(a)(3), the Guidelines and Guidelines range, § 3553(a)(4), the Guidelines' policy statements, § 3553(a)(5), "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct," § 3553(a)(6), and "the need to provide restitution to any victims of the offense," § 3553(a)(7).

A sentencing court must consider the § 3553(a) factors. Nelson v. United States, 555 U.S. 350, 352 (2009). The Guidelines are "the lodestone of sentencing" and the post-Booker sentencing regime sensibly "steer[s] district courts to more within-Guidelines sentences." Peugh v. United States, 569 U.S. 530, 543 (2013). That is because "[t]he post-Booker federal sentencing scheme aims to achieve uniformity by ensuring that sentencing decisions are anchored by the Guidelines and that they remain a meaningful benchmark through the process of appellate review." Id.

For the reasons set forth below, no variance is warranted from the Guidelines level, and a sentence of 27 months is necessary and appropriate. To the extent the Court nevertheless wishes to vary, it should explain its reasoning for doing so on the record, taking into account the § 3553(a) sentencing factors.[3]

### 1. The Advisory Guidelines Range Should Be Given Considerable Weight

As an initial matter, the advisory Guidelines range should be given considerable weight. See United States v. Lloyd, 469 F.3d 319, 322-24 (3d Cir. 2006) (noting that it is "entirely consistent" with post-Booker precedent "for the District Court to give the Guidelines '"great weight"'"). "The fact that § 3553(a)[(4)] explicitly directs sentencing courts to consider the Guidelines supports the premise that district courts must begin their analysis with the Guidelines and remain cognizant of them throughout the sentencing process." United States v. Langford, 516 F.3d 205, 211-12 (3d Cir. 2008) (internal quotation marks omitted). Moreover, "[t]he authors of

---

[3] Indeed, if the Court is inclined to grant a variance, it must "explain why the variance is justified . . . [with] explanations of the relevant sentencing factors [that] go beyond mere formalism." Ali, 508 F.3d at 154 (internal quotation marks omitted). The Third Circuit requires a "more complete explanation to support a sentence that varies from the Guidelines than we will look for when reviewing a sentence that falls within a properly calculated Guidelines range." United States v. Tomko, 562 F.3d at 571 (internal quotation marks omitted). Moreover, a court "must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance." Merced, 603 F.3d at 216. "[T]he more that a sentence varies from the advisory Guidelines range, the more compelling the supporting reasons must be." United States v. Manzella, 475 F.3d 152, 161 (3d Cir. 2007). Thus, "significant variances from the advisory Guidelines range must be adequately supported by the record." United States v. Kononchuk, 485 F.3d 199, 204 (3d Cir. 2007) (internal quotation marks omitted). If "the court is strongly inclined to impose a sentence outside (above or below) the advisory range" by variance, it should notify the parties in advance of sentencing. United States v. Ausburn, 502 F.3d 313, 327 n. 26 (3d Cir. 2007). Such notice, while not required, "will usually promote both fairness and the efficient administration of justice by allowing the parties to better prepare and focus their arguments to accord with the court's concerns." Id.

4

the Guidelines, no less than district courts, have been tasked with ensuring that criminal sentences meet the goals of sentencing set forth in § 3553(a)," Merced, 603 F.3d at 221-22, and have prepared "Guidelines that seek to embody the § 3553(a) considerations," Rita v. United States, 551 U.S. 338, 347-50 (2007); 28 U.S.C. §§ 991(b)(1)(A), 994(f).  "It is simply not the case that the Sentencing Guidelines are merely a volume that the district court reads with academic interest in the course of sentencing." Peugh, 569 U.S. at 548.

To the contrary, the "guidelines represent the collective determination of three governmental bodies—Congress, the Judiciary, and the Sentencing Commission—as to the appropriate punishments for a wide range of criminal conduct." United States v. Cooper, 437 F.3d 324, 331 & n.10 (3d Cir. 2006). "[T]he Guidelines reflect Congress's determination of potential punishments, as set forth in statutes, and Congress's on-going approval of Guidelines sentencing, through oversight of the Guidelines revision process," as well as its instructions to the Commission, and its direct input into certain Guidelines. United States v. Goff, 501 F.3d 250, 257 (3d Cir. 2007); see 28 U.S.C. §§ 991, 994.  The Judiciary has had input into the Guidelines directly as Commission members, and indirectly through the Commission's ongoing and "careful study based on extensive empirical evidence derived from the review of thousands of individual sentencing decisions." Gall v. United States, 552 U.S. 38, 46 (2007).  Finally, the Commission "has the capacity courts lack to base its determinations on empirical data and national experience, guided by professional staff with appropriate expertise," thereby "modif[ying] and adjust[ing] past practice in the interests of greater rationality, avoiding inconsistency, complying with congressional instructions, and the like." Kimbrough v. United States, 552 U.S. 85, 96, 108-09 (2007) (internal quotation marks omitted); see 28 U.S.C. § 994(m), (o).  "Because the Guidelines reflect the collected wisdom of various institutions, they deserve careful consideration in each case." Goff, 501 F.3d at 257.

Accordingly, "a within-guidelines range sentence is more likely to be reasonable than one that lies outside the advisory guidelines range[.]" Goff, 501 F.3d at 257 (internal quotation marks omitted).  For that reason, "'[i]n the usual sentencing . . . the judge will use the Guidelines range as the starting point in the analysis and impose a sentence within the range.'" Peugh, 569 U.S. at 542 (citation omitted).  This Court should do so here and impose a sentence at the top of the 21-27 month Guidelines range calculated by the Probation Office and the government.

### 2. A Sentence at the Top of the 21-27 Month Guidelines Range is Warranted Given the Nature and Circumstances of the Offense

The Court must consider the nature and circumstances of the defendant's offense when imposing sentence.  18 U.S.C. § 3553(a)(1).  Here, the offense is serious and warrants a sentence at the top of the 21 to 27 month Guidelines range.  18 U.S.C. § 3553(a)(2)(A); Goff, 501 F.3d at 257 ("[T]he Guidelines reflect a carefully considered assessment of the seriousness of federal crimes.").

D'Amico's crime is a significant one.  He caused more than 14,000 people to donate money based on his fraudulent story that the money would help improve the life of a Good Samaritan.  The defendant knew that the truth about Bobbitt—"a homeless man without a compelling story"— would not have generated much, if any, response from the public. ▬▬▬▬  So he used a lie to raise the funds.  D'Amico also knew that the truth about the disposition of the funds would have

5

rung hollow, so he falsely claimed that Bobbitt would have control over the funds. As demonstrated by the contemporaneous text messages ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ despite multiple chances to undo some of the harm he caused, D'Amico continued to spend the money until it was gone. He also continued his coverup, for example, by claiming on national television in August 2017 that over $150,000 remained despite having blown through all the money months earlier. See Police raid home of couple who raised $400K for homeless man (https://whyy.org/articles/couple-who-raised-funds-for-homeless-man-being-investigated/). The defendant's actions justify a substantial sentence.

The government agrees with the Presentence Report that because GoFundMe repaid all 14,000 donors, there is only one victim, as that term is defined by the Sentencing Guidelines. Nonetheless, that defendant's actions defrauded so many people also justifies a substantial sentence.

### 3. A Sentence at the Top of the 21-27 Month Guidelines is Warranted Given the History and Characteristics of the Defendant

A Guidelines sentence is further supported by the history and characteristics of the defendant. 18 U.S.C. § 3553(a)(1). Other than the instant offense, the defendant, who is 42 years old, has had only minor interactions with the court system. ▮▮▮▮▮▮▮▮▮▮▮▮ This factor weighs in favor of a lighter custodial sentence.

### 4. A Guidelines Sentence is Warranted to Afford Adequate Deterrence, Protect the Public from Further Crimes of the Defendant, and Promote Respect for the Law

The Court must impose a sentence that affords adequate deterrence, promotes respect for the law, and protects the public from further crimes of the defendant. A sentence within the Guidelines range would accomplish these objectives.

One of the paramount factors the Court must consider in imposing sentence under Section 3553(a) is the need for the sentence to "afford adequate deterrence to criminal conduct." 18 U.S.C. § 3553(a)(2)(B).

The Third Circuit recognized the importance of Guideline terms of incarceration in white-collar prosecutions: "if a district court seeks to vary from the Guidelines recommendation of incarceration for persons who have committed serious white-collar crimes, it must provide a thorough and persuasive explanation for why the congressionally-approved policy of putting white-collar criminals in jail does not apply." United States v. Negroni, 638 F.3d 434, 446 (3d Cir. 2011). In that regard, "[t]he Sentencing Commission recommended terms of imprisonment for economic crimes like [defendant's] because of its concern that sentencing for white-collar crime had been ineffectual." United States v. Levinson, 543 F.3d 190, 201 (3d Cir. 2008). No doubt "the Commission was aware of the costs of incarceration when it made its judgment that white-collar criminals generally should be sent to prison. To use the Commission's characterization, white-collar crimes such as wire fraud and tax fraud are 'serious,' and typically will warrant serious punishment, including prison time." Id.; see Negroni, 638 F.3d at 446 (emphasizing "the Sentencing Commission's express concern with the once-common practice of sentencing 'to

6

probation an inappropriately high percentage of offenders guilty of certain economic crimes, such as theft, tax evasion, antitrust offenses, insider trading, fraud, and embezzlement, that in the Commission's view are "serious.""" (quoting U.S.S.G. § 1A1.4(d) (2010))).

The need for general deterrence here is particularly acute. D'Amico's scheme—and its unraveling—received ample attention. His sentence is apt to receive similar attention, including from others who may be tempted to engage in a similar fraud. Fraud, both generally and specifically using GoFundMe to appeal to the public's generosity, is not going away. For instance, on March 3, 2022, local media reported on a fraudulent GoFundMe campaign attempting to raise money to support the search for a missing girl from Bridgeton, New Jersey. See Bogus fundraiser shut down as family prepares for 8th birthday of girl missing since 2019 (https://www.nj.com/cumberland/2022/03/bogus-fundraiser-shut-down-as-family-prepares-for-8th-birthday-of-girl-missing-since-2019.html). Without a significant period of incarceration in this case, somebody might cynically conclude that the potential benefit from a successful online fraud scheme will not be outweighed by its costs.

### 5. A Sentence at the Top of the Guidelines is Warranted to Avoid Unwarranted Sentencing Disparities

Moreover, imposition of a sentence at the top of the recommended Guidelines range best serves "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6). In creating the Guidelines, "Congress sought uniformity in sentencing by narrowing the wide disparity in sentences imposed by different federal courts for similar criminal conduct." Rita, 551 U.S. at 349 (internal quotation marks omitted). Even after Booker, "uniformity remains an important goal of sentencing." Kimbrough, 552 U.S. at 107. The Guidelines "help to avoid excessive sentencing disparities," id. (internal quotation marks omitted), because "avoidance of unwarranted disparities was clearly considered by the Sentencing Commission when setting the Guidelines ranges," Gall, 552 U.S. at 54, and because most defendants are sentenced within the Guideline ranges, see Peugh, 569 U.S. at 541. Sentencing within the Guidelines range avoids "creat[ing] a potential disparity in sentence for those convicted of [the same crime] in New Jersey, and across the country, based on little, if anything, more than the luck of which judge is assigned to a particular case." Goff, 501 F.3d at 261. Accordingly, in an effort to avoid an unwarranted sentencing disparity in this District and similar cases nationwide, the Court should impose a top-of-the-Guidelines sentence here.

### III. The Court Must Address the Defendant Personally to Provide an Opportunity to Speak and Present Mitigating Information

This Court must address the defendant personally in order to provide him with an opportunity to speak on his own behalf. *United States v. Scripps*, 961 F.3d 626, 633 (3d Cir. 2020). Rule 32(i)(4)(A)(ii), which codifies the defendant's right of allocution, requires the judge at sentencing to "address the defendant personally in order to permit the defendant to speak or present any information to mitigate the sentence." The Third Circuit has made clear that it is not enough for the Court to ask *defense counsel* if the defendant wishes to allocute. Rather, the Court must ask the defendant directly whether he or she wishes to do so. *See, e.g.*, *Scripps*, 961 F.3d at 633 ("Our controlling law and the text of Rule 32 make clear that courts must personally address the defendant and that no substitute for such personal address will be permitted."). Consequently,

the Government respectfully requests that the Court ask the defendant personally, on the record, whether he wishes to address the Court concerning the sentence before it is imposed.

### IV.     The Court Should Explain the Reasoning For Its Sentence

Finally, "it is not enough for the district court to carefully analyze the sentencing factors. A separate and equally important procedural requirement is <u>demonstrating that it has done so</u>." <u>United States v. Merced</u>, 603 F.3d 203, 215-16 (3d Cir. 2010) (emphasis in original). First, "[t]he record must demonstrate the trial court gave meaningful consideration to the § 3553(a) factors." <u>United States v. Sevilla</u>, 541 F.3d 226, 232 (3d Cir. 2008) (internal quotation marks omitted). Second, "the court must acknowledge and respond to any properly presented sentencing argument which has colorable legal merit and a factual basis." <u>Ausburn</u>, 502 F.3d at 329 & n. 33. "Explicit rulings are plainly to be preferred," even for lesser arguments, "both for the benefit of the parties and for this court on review." <u>United States v. Goff</u>, 501 F.3d 250, 254-256 & n.10 (3d Cir. 2007). Third, the Court must provide "sufficient justifications on the record to support the sentencing conclusions." <u>United States v. Tomko</u>, 562 F.3d 558, 567 (3d Cir. 2009) (internal quotation marks omitted). "[M]erely reciting the § 3553(a) factors, saying that counsel's arguments have been considered, and then declaring a sentence, are insufficient[.]" <u>Manzella</u>, 475 F.3d at 161 (internal quotation marks omitted).

### V.      Restitution

The United States further requests that the Court order D'Amico to pay restitution to GoFundMe, which refunded all of the donors to the campaign. He should be ordered to pay restitution joint and severally with McClure and Bobbitt in the amount of $401,900.71.

### VI.     Conclusion

For the reasons set forth herein, including the need to punish D'Amico and to deter him and others from committing future offenses, the United States respectfully asks this Court to sentence Mark D'Amico at the top end of the 21 to 27 month Guidelines range.

Respectfully Submitted,

PHILIP R. SELLINGER
United States Attorney

  /s/Jeffrey B. Bender
JEFFREY B. BENDER
JASON RICHARDSON
DIANA CARRIG
Assistant U.S. Attorneys
United States Attorney's Office

cc:     Mark Davis, Esq., (*via email*)
        Daniel Carney, United States Probation Office (*via email*)